UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORPORATE AUTO RESOURCE
SPECIALISTS,

      Plaintiff(s),

v.

MELTON MOTORS, INC. and
GENERAL MOTORS CORP.,

      Defendant(s).
_____/

Case No. 05-70010

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS [5] [8]
AND DISMISSING PLAINTIFF'S REMAINING CLAIMS**

Plaintiff filed an action alleging violations of 15 U.S.C. § 13(c), tortious interference with a business relationship, and civil conspiracy. The matter before the Court is Defendants' motion to dismiss all the claims. Because the statute of limitations has accrued and for the reasons that follow, the motions are GRANTED with respect to Plaintiff's 15 U.S.C. § 13(c), GRANTED IN PART and DENIED IN PART with respect to Plaintiff's tortious interference claim, and DENIED with respect to Plaintiff's civil conspiracy claim. The parties are not completely diverse. There is therefore no jurisdiction for the Court to entertain the remaining state law claims. Accordingly, the remaining torious interference and civil conspiracy claims are DISMISSED WITHOUT PREJUDICE.

**I.    Factual and Procedural History**

Defendant General Motors Corporation ("GM") purchases vehicles from its competitors for testing. (Compl. ¶ 7.) GM contracted with Plaintiff Corporate Auto Resource Specialists ("Plaintiff") for the purchase of competitors' vehicles for its testing program. (Id. ¶ 14.) When this contract expired, Defendant Melton Motors ("Melton") became GM's exclusive provider. (Id. ¶ 19.)[1]

Plaintiff filed a complaint against Defendants on January 4, 2005. The complaint contains three counts: (i) a violation of 15 U.S.C. § 13(c), *i.e.*, § 2(c) of the Robinson-Patman Act; (ii) conspiracy; (iii) and tortious interference with a business relationship. Defendants then filed motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

**II.    Standard of Review**

> Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Although [the court] must accept as true all of the factual allegations in the complaint, [it] need not accept as true legal conclusions or unwarranted factual inferences.

*United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 745 (6th Cir. 2004) (citations omitted).

**III.    Analysis**

**A.  Statute of Limitations for Robinson-Patman Act**

Defendants first argue that the claims are barred by the statute of limitations. For a claim under 15 U.S.C. § 13(c), a plaintiff must file an action within four years of a violation. *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 405 (6th Cir. 1999).

---

[1]Prior to these exclusive contracts, GM contracted with both Plaintiff and Melton to provide different types of vehicles. (Compl. ¶¶ 10, 13.)

Plaintiff claims § 13(c) was violated when Melton payed (and GM accepted) "improper and illegal money, promises or inducements" for the contract to provide test cars. (Compl. ¶¶ 35, 36.) The allegedly illegal conduct centers around Don Heitchue, a former employee of GM who Melton later hired as a contractor. (Id. ¶ 20.) Plaintiff claims that the "improper and illegal money, promises or inducements" were offered to and accepted by Heitchue. (Id. ¶¶ 35, 36.)[2] According to Plaintiff, "GM awarded the contract to Melton without competitive bidding and to the exclusion of Plaintiff as a direct result of Melton's improper and illegal offer to Heitchue . . . ." (Id. ¶ 21.)

In the complaint, the date of the GM-Melton contract is not mentioned. Defendants contend that the contract was created on December 1, 2000, however, and submit a purchase order as evidence of this claim. (Melton's Ex. B.) They then argue that, because the complaint was filed more than four years after the contract, the statute of limitations bars enforcement of Plaintiff's claim.

Plaintiff does not dispute the date of the contract. Instead, it argues that the claim does not accrue until the unlawful benefit was received by Heitchue.[3] Plaintiff points out

---

[2] Plaintiff specifically notes the "promise of future employment" as one of the illegal inducements. (Compl. ¶¶ 35, 36.)

[3] It should be noted that this interpretation of the Robinson-Patman Act's bribery prohibition puts the statute at odds with other commercial bribery laws in which an offer (even without acceptance or receipt) can constitute a violation. *See* 2 LOUIS ALTMAN, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 12:2 (4th ed. 1994)("The offer suffices. It is not necessary that the gift be received or understood as such by the offeree. The act of unfair competition is the offer itself."); MODEL PENAL CODE § 224.8(3) (2001)("A person commits [commercial bribery] if he confers, *or offers* or agrees to confer, any benefit . . . .")(emphasis added). In addition, at least one author has noted that an illegal offer violates the Robinson-Patman Act. *See* 2 LOUIS ALTMAN, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 12:1 (4th ed. 1994)("The Robinson-Patman Amendment to the Clayton Act expressly prohibits the offer or receipt

that Heitchue was not employed by Melton until sometime after the contract. This is date, according to Plaintiff, is when the claim begins to accrue.

Defendants, on the other hand, contend that the Court must focus on their alleged overt acts, rather than Plaintiff's injuries. Defendants cite to *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401 (6th Cir. 1999). In that case, the Sixth Circuit examined a statute of limitations challenge to a Robinson-Patman commercial bribery claim. The court stated that "a cause of action accrues and the statute begins to run when a defendant commits an act that injures plaintiff's business." *Id.* at 405 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)). Following this rule, the Court should look to the date when Melton was awarded the contract–*i.e.*, when Plaintiff was injured–as the last conceivable date for accrual because an injury cannot be the result of acts that subsequently occur.[4]

---

of anything of value as a commission except for services actually rendered in connection with the sale or purchase of goods.")(footnote omitted).

[4]Defendants also cite to *State of Michigan ex rel. Kelley v. C.R. Equip. Sales, Inc.*, 898 F.Supp. 509 (W.D. Mich. 1995) for this proposition. The court, examining claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, stated that
> [t]he cause of action accrues from the defendant's last overt act. Whether plaintiff's injuries occurred in the limitations period is irrelevant. For statute of limitations purposes, therefore, the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts.

*Id.* at 512 (quoting and citing *Peck v. General Motors Corp.*, 894 F.2d 844, 848-49 (6th Cir.1990)). This holding is not especially helpful in this case, however, because both parties focus on overt acts: Defendants cite to the alleged promises that lead to the contract and Plaintiff cites to the receipt of any benefits (which may have occurred after the contract).

In response, Plaintiff argues that the statute of limitations does not begin to run until the date a plaintiff could first bring a claim under the statute. It contends that, in this case, a violation of the Robinson-Patman Act did not occur until Heitchue actually received the benefits promised by Melton. This argument turns on the premise that Melton's promise of employment is not something "of value" under the Act.

Pursuant to the Act, it is unlawful to either accept or receive a bribe. *See* 15 U.S.C. § 13(c) ("It shall be unlawful for any person . . . to receive or accept, anything of value . . . ."). As Plaintiff contends, Heitchue did not have receive any tangible benefit until some date after the GM-Melton agreement was created. For the contract to be tainted, however, Heitchue would have had to accepted Melton's promises–offer of employment, fees, etc.–sometime before the agreement took effect (even if he did not receive them until sometime later). Plaintiff contends that acceptance of these promises, without more, did not constitute violations of § 2(c) of the Robinson-Patman Act. This argument must be rejected.

An offer resulting in actual employment has been found to constitute something of value. *See Unlimited Screw Products v. Malm*, 781 F.Supp. 1121, 1130 (E.D. Va. 1991). Similarly, an offer of employment which is then accepted qualifies under the Act. To hold otherwise would undermine the law of contracts. Contracts often create obligations and benefits that occur sometime in the future. They are not valueless merely because a party does not immediately realize the benefit.

Plaintiff's interpretation would create unintended results. The Robinson-Patman Act protects the fiduciary relationship between a buyer and a seller. Specifically, § 2(c) prohibits a buyer's employee from purchasing goods from a specific seller based on

5

personal enticement, *i.e.*, a bribe.  See *Harris v. Duty Free Shoppers Ltd. P'ship*, 940 F.2d 1272, (9th Cir. 1991)("Section 2(c) of the Robinson-Patman amendment to the Clayton Act encompasses cases of commercial bribery tending to undermine the fiduciary relationship between a buyer and its agent, representative, or other intermediary in a transaction involving the sale or purchase of goods.")(footnote omitted).  A seller who obtains a contract with a buyer by promising the employee future benefits creates the type of wrong the statute intended to prohibit.  This occurs regardless of whether the seller eventually fulfills its promises.  Thus, in light of the statute's purpose, it is not logical to give a violator this means of escape–i.e., reneging on the promise to reward the employee.

Plaintiff also contends that the statute of limitations did not accrue because the violation was continuing.  "A continuing antitrust violation is one in which the plaintiff's interests are repeatedly invaded.  When a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured by an act of the defendants."  *DXS, Inc. v. Siemens Med. Sys., Inc.* 100 F.3d 462, 467 (6th Cir. 1996)(quotation and citations omitted).  For this type of violation, there must be an "overt act" which is characterized by two elements: "(1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff."  *Id.* at 468 (quotations and citations omitted).

In *Grand Rapids Plastics*, the plaintiff argued that each payment to the defendant was an independent act.  *Grand Rapids Plastics*, 188 F.3d at 406.  The Sixth Circuit disagreed because "the individual payments . . . were only a manifestation of the previous agreement."  *Id.*  That is the case here.  Moreover, Plaintiff has not shown how any

subsequent acts constitute a "new and accumulating injury." Thus, there is not a continuing violation.

As noted, the contract between Melton and GM took effect on December 1, 2000.[5] The complaint was filed on January 4, 2005. Because more than four years passed between the contract and the filing, the statute of limitations bars enforcement of the Robinson-Patman Act claim.

**B. Statute of Limitations for Tortious Interference**

Melton also contends that Plaintiff's tortious interference claim is time barred.[6]

> To establish a prima facie case of tortious interference with a business relationship, a plaintiff must show (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional or improper interference with the relationship that induces or causes a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*DXS*, 100 F.3d at 469 (citations omitted). The statute of limitations for this action is three years. *Blazer Foods, Inc. v. Restaurant Properties, Inc.*, 673 N.W.2d 805, 813 (Mich. Ct. App. 1993).

In Michigan, it is well settled that a tort action does not accrue until damages can be alleged. *See id.* ("Limitations periods in tort actions begin to run at the time all elements, including damages, can be alleged in a proper complaint.")(citations omitted). Plaintiff

---

[5] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997)(quotation and citation omitted).

[6] GM is not named in this claim.

7

attempts to expand this rule by arguing that the period does not begin to run until *all* the damages have occurred. This conclusion is not correct. In Michigan,

> [o]nce all of the elements of [a tort claim], including the element of damage, are present, the claim accrues and the statute of limitations begins to run. *Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred*.

*Horvath v. Delida*, 540 N.W.2d 760, 763 (Mich. Ct. App. 1995)(emphasis added).

According to the complaint, the first tortious interference was Melton's inducement of Heitchue (that resulted in the Melton-GM contract). (Compl. ¶ 50.) The injury from this act began "[f]rom the date that Melton was first awarded the contract by Heitchue . . . ." (Id. ¶ 29.) As noted above, this date was December 1, 2000. Because the complaint was not filed until January 4, 2005, the three-year statute of limitation period passed and the claim is not enforceable for any interference related to the this contract.

The complaint also alleges that "Melton continues to offer improper and illegal inducements and/or payments to convince GM . . . from having any contractual relationship with [Plaintiff.]" (Compl. ¶ 51.) The complaint does not set out the dates of these alleged acts. Thus, at this time, it is unclear whether they are timely.

Plaintiff attempts to connect all the events together by arguing that Melton was engaged in a continuing wrong.

> Under the continuing wrong doctrine, an alleged timely actionable event will allow consideration of and damages for connected conduct that would be otherwise barred. Thus, in certain cases, the doctrine recognizes that where a defendant's wrongful acts are of a continuing nature, the period of limitation will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that defendant's tortious conduct continues. In order to recover under this doctrine, the plaintiff must establish a continuing wrong by showing continual tortious acts, not by continual harmful effects from an original completed act.

*Blazer Foods*, 673 N.W.2d at 809-10 (quotations and citations omitted).  In Michigan, however, "this doctrine has been given only limited application" and, importantly, the court in *Blazer Foods* declined to extend it to claims for tortious interference.  *Id.* at 814.[7]  Thus, because the continuing violation doctrine is not applicable, any separate tortious interference violations that occurred before January 4, 2002 are barred by the statute of limitations.  As noted, the complaint does not state the specific dates for every alleged inducement and payment.  A motion to dismiss this entire count based on statute of limitations ground is therefore improper.

### C. Failure to State a Claim for Tortious Interference

Melton also argues that Plaintiff's tortious interference claim fails because it does not allege the loss of business relationship or expectancy.  Plaintiff's contract with GM expired on its own terms.  (Compl. ¶ 16.)  Defendants therefore argue that, at most, Plaintiff lost an opportunity to bid on the subsequent contract and this is not sufficient to support the claim.

As noted above, one element to a tortious interference claim is the existence of a valid business relationship or expectancy.  *DXS*, 100 F.3d at 469 (citations omitted).  Both parties agree that "[t]he expectancy must be a reasonable likelihood or probability, not

---

[7]Moreover, the doctrine cannot be used for overt acts simply because the defendant may have had the same goal.  *See Lucy v. Amoco Oil Co.*, 582 F.Supp. 1168, 1173 (E.D. Mich. 1984)("Any overt conduct on the part of defendant which gave rise to a cause of action for tortious interference with prospective business advantage that occurred prior to September 27, 1979, is barred by operation of the statute of limitations.  The fact that such conduct may have been motivated by policies or prejudices which continued to exist subsequent to that date, which policies may have motivated similar conduct within the statutory period for bringing claims, does not prevent application of the statute to the earlier claims.").  In this case, the job offer and other alleged illegal inducements that occurred prior to the Melton-GM contract are overt acts and, thus, not subject to a continuing violation theory.

mere wishful thinking." *Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 348 (Mich. Ct. App. 1981)(citations omitted).

Defendants' motion to dismiss requires the Court to accept the allegations contained in the complaint as true.[8] Plaintiff states that "there is every reason to believe that Plaintiff would have continued to contract with GM" but for Defendants' tortious interference. (Compl. ¶ 52.) At this stage, the Court cannot determine if this allegation is reasonable or, instead, based on mere subjective perceptions. Melton's motion to dismiss this count must therefore be denied.

### D. Failure to State a Claim for Civil Conspiracy

Melton argues that Plaintiff's conspiracy claim fails as a matter of law because the tortious interference cannot stand. As discussed above, part of this claim cannot be dismissed at this stage. Thus, Melton's motion on this claim must be denied.

GM contends that the conspiracy claim against it must be dismissed because there is no logical purpose for it to enter the alleged conspiracy. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 686 N.W.2d 770, 786 (Mich. Ct. App. 2004). Although GM argues that a plaintiff must assert a reasonable rationale. It does not, however, cite any case that stands for this proposition. Its motion must therefore be denied.

---

[8]Thus, Melton's reliance on, *e.g.*, *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401 (6th Cir. 1999), is misplaced because the court there was considering an appeal of a motion for summary judgment.

**IV. Conclusion**

For the reasons stated above, the Court hereby orders that GM's and Melton Motors's motions to dismiss are GRANTED IN PART and DENIED IN PART. The remaining state law claims are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

<div style="margin-left:2em">

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

</div>

Dated: April 19, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 19, 2005, by electronic and/or ordinary mail.

<div style="margin-left:2em">

s/Carol A. Hemeyer
Case Manager

</div>